## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHNNY LEE SANDERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-01279-JD |
| | ) | |
| AEROTEK, INC.; and | ) | |
| ALICIA LOZANO, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is a Motion to Dismiss filed by Defendants Allegis Group

Company d/b/a Aerotek Staffing Agency ("Aerotek")[1] and Alicia Lozano ("Ms.

Lozano") [Doc. No. 11]. Plaintiff Johnny Lee Sanders, Jr. ("Mr. Sanders") has filed a

response [Doc. No. 16], and Aerotek and Ms. Lozano filed a reply [Doc. No. 18].

Additionally, the Court allowed Aerotek and Ms. Lozano to file a supplemental brief

[Doc. No. 31], to which Mr. Sanders responded [Doc. No. 33]. For the reasons stated

below, the Court grants the Motion to dismiss Mr. Sanders' breach of contract and

violation of public policy claim against Aerotek and his claims against Ms. Lozano.

---

[1] After this Motion to Dismiss was fully briefed, the parties jointly moved the Court to substitute Aerotek, Inc. as defendant for the originally named defendant, Allegis Group, DBA, Aerotek Staffing Agency. [Doc. No. 40]. The Court granted the joint motion and substituted Aerotek, Inc. as the properly named remaining defendant. [Doc. No. 41].

I.     **BACKGROUND**

Construing the allegations in the Complaint in the light most favorable to Mr.

Sanders, and taking all well-pleaded allegations as true,[2] at the time of suit, Mr. Sanders

was a 60-year-old African American male. Compl. ¶¶ 1, 8–9 [Doc. No. 1]. Defendant

Allegis Group Company, d/b/a Aerotek Staffing Agency ("Aerotek"), employed Mr.

Sanders from December 18, 2019, until his termination on May 26, 2020. *Id.* ¶¶ 10, 83;

*see also* [Doc. No. 7-1 at 2].[3] Mr. Sanders was the oldest housekeeper on the graveyard

shift assigned to work at Integris Baptist Medical Center ("Integris"). *Id.* ¶¶ 11–12, 15.

Ms. Lozano is an employee and agent of Aerotek. *Id.* ¶ 2(C).

During Mr. Sanders' employment with Aerotek, Integris was a "hazardous jobsite"

and required the use of Personal Protective Equipment ("PPE") due to the COVID-19

pandemic. *See id.* ¶¶ 11, 11.a. Mr. Sanders alleges that Katelyn (last name unknown,

"LNU"), a Caucasian female in her mid to late 20s, was the lead housekeeper on the

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (explaining the court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff").

[3] In ruling on a motion to dismiss, a court may consider: (1) documents that the complaint incorporates by reference; (2) documents referenced in the complaint if they are central to the plaintiff's claims and the parties don't dispute the documents' authenticity; and (3) matters of which the court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Although Mr. Sanders did not attach a copy of his Equal Employment Opportunity Commission ("EEOC") charge to his Complaint, the Complaint incorporates the charge by reference. *See* Compl. ¶ 7. Mr. Sanders also references the charge and his exhaustion of administrative remedies in the Complaint, *see id.*, and there is no dispute as to the authenticity of the charge attached to Integris' Motion as Exhibit No. 1. [Doc. No. 7-1]. The Court will therefore reference the charge in its Order.

graveyard shift and an Integris employee. *Id.* ¶¶ 16–18. Katelyn trained Mr. Sanders on the housekeeping duties and safety responsibilities relating to PPE use. *Id.* ¶ 19.

On March 12, 2020, Katelyn ordered Mr. Sanders and two other housekeepers to follow her to the Emergency Room ("ER"). *Id.* ¶ 32. Mr. Sanders alleges that Katelyn was wearing PPE that covered her nose and mouth, but that Mr. Sanders was not given any PPE on this occasion or alerted by Katelyn of the need for PPE. *Id.* ¶¶ 33–36. Katelyn escorted Mr. Sanders and the other two housekeepers to a "restricted COVID-19 quarantine area." *Id.* ¶ 34.

Four days later, Mr. Sanders reported the incident to Wayne LNU. *Id.* ¶ 37. According to Mr. Sanders, Wayne, the evening shift manager, is an African American male and an Integris employee. *Id.* ¶¶ 38–40. As a result, Wayne met with Mr. Sanders and the other graveyard shift housekeepers the same day to discuss their "potential exposure to COVID-19." *Id.* ¶¶ 41–42. Wayne "concluded that he had no authority to address the situation," and advised that he would refer it to his supervisors. *Id.* ¶ 43. Mr. Sanders alleges that the potential COVID-19 exposure incident was never formally addressed by Aerotek or Integris. *Id.* ¶ 44.

Mr. Sanders alleges from then on, Katelyn "vengefully" assigned him the COVID-19 rooms to clean. *Id.* ¶ 45. When Mr. Sanders reported his assignments to Nancy LNU (housekeeping supervisor and Integris employee) and Wayne, who both gave Katelyn permission to alter the COVID-19 cleaning assignments, they advised Katelyn was pregnant and exempted from cleaning COVID-19 rooms. *Id.* ¶¶ 28–29, 46–47. Mr. Sanders alleges that Katelyn, a young white female, was exempted from cleaning

COVID-19 rooms while he, an older black male, was not protected from the same hazards, even though Defendants were "aware that [Mr. Sanders'] protective mask was not sealing." *Id.* ¶¶ 61–63, 68, 70–73.

Mr. Sanders alleges that "aged blacks" are at a higher risk of death from COVID-19 than younger pregnant white females. *Id.* ¶ 49. After complaining for weeks to Wayne that his PPE did not fit properly, Mr. Sanders was given a PPE (N95 mask) fit test about two weeks before his termination. *Id.* ¶¶ 50–52. Mr. Sanders asserts that it "was documented at that time that [his] N95 mask was not properly sealing to his face." *Id.* ¶ 52.

Mr. Sanders alleges that after he reported Katelyn to Wayne, he received a written disciplinary warning from Ms. Lozano of Aerotek for failing to respond on a walkie talkie to Katelyn in a prompt manner. *Id.* ¶¶ 37, 46, 75, 78. After Mr. Sanders told Wayne he would not clean another COVID-19 room without proper PPE, Ms. Lozano, acting on behalf of Integris and Aerotek, suspended Mr. Sanders pending an investigation. *Id.* ¶¶ 81–82. Mr. Sanders was subsequently terminated for not responding on the walkie talkie and not cleaning two COVID-19 rooms. *Id.* ¶¶ 83–84.

On October 19, 2020, Mr. Sanders filed a charge of discrimination against Aerotek with the EEOC, asserting discrimination based on race and retaliation in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). [Doc. No. 7-1]. The EEOC issued a dismissal and notice of right to sue on December 15, 2020. [Doc. No. 1-1].

Mr. Sanders filed this lawsuit on December 22, 2020. In addition to Title VII and ADEA claims, Mr. Sanders asserts a breach of contract and violation of public policy claim against Aerotek for unsafe working conditions. Specifically, Mr. Sanders alleges that Aerotek "breached any agreement" with Mr. Sanders by failing to follow federal regulations for hazardous jobsites and knowingly placing him at risk of exposure to disease and death when it failed to provide him with proper PPE. Compl. ¶¶ 52–60. Mr. Sanders sues Ms. Lozano in her official and individual capacity for retaliation and wrongful termination under Title VII and the ADEA.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Under this standard, all well-pleaded factual allegations are accepted as true. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth

and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 at 334 (3d ed. 2004). In opposing a Rule 12(b)(5) motion, the "plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008). On this issue, the "parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Id.*

Finally, a pro se litigant's complaint is given more leeway than one drafted by counsel. *See Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996) (liberal construction of pro se litigant's complaint). Even though this Court must construe Mr. Sanders' pleadings generously, it "should not assume the role of advocate . . . ." *Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). Some allowance is made for certain deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories, but "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The Court also cannot "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New*

6

*Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III.   ANALYSIS

Aerotek moves to dismiss Mr. Sanders' breach of contract and violation of public policy claim under Federal Rule of Civil Procedure 12(b)(6).[4] Ms. Lozano moves to dismiss Mr. Sanders' claims under Rule 12(b)(5) for failure to effect service of process within 90 days after filing the Complaint.

### A.   Mr. Sanders' breach of contract and violation of public policy claim against Aerotek is dismissed.

Aerotek contends that Mr. Sanders cannot pursue a claim for workplace safety violations against Aerotek under state or federal law because Mr. Sanders' sole avenue of relief for alleged unsafe working conditions is through the Occupational Safety and Health Administration ("OSHA") administrative process. In other words, Aerotek asserts that Mr. Sanders had an adequate remedy through OSHA's administrative process. In his responses [Doc. Nos. 16, 33], Mr. Sanders appears to suggest that he is asserting a tort claim against Aerotek for public policy wrongful discharge, i.e., a *Burk* tort, or that he is bringing the claim under OKLA. STAT. tit. 76, § 111. *See Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989).

---

[4] Aerotek concedes that its Rule 12(b)(5) arguments are moot having been properly served on March 5, 2021. Aerotek's Suppl. Br. [Doc. No. 31 at 2]. Aerotek also notes that its Motion is partial in nature as it has not moved to dismiss Mr. Sanders' remaining claims under Title VII and the ADEA. *Id*. Subject to its Rule 12(b)(6) motion, Aerotek answered on March 26, 2021. *See* [Doc. No. 27].

In *Burk*, the Oklahoma Supreme Court created an exception to its general rule of at-will employment by recognizing a cause of action for wrongful discharge in violation of public policy. *Id.* Generally, "[e]mployers are free to discharge at-will employees in good or bad faith, with or without cause," but the *Burk* tort allows an at-will employee to sue for wrongful discharge in violation of public policy. *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008). The Oklahoma Supreme Court has "cautioned, however, that the *Burk* tort is unique: it applies to only a narrow class of cases and it must be tightly circumscribed." *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001). To state a *Burk* claim, an at-will employee must allege, among other things, that his discharge violated a public policy goal found in Oklahoma's constitutional, statutory, or decisional law, and that no adequate statutory remedy exists to protect the policy goal. *Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty.*, 186 P.3d 928, 932 (Okla. 2008).

Aerotek challenges Mr. Sanders' *Burk* claim on the basis that he had an adequate statutory remedy through OSHA's administrative process.[5] The Oklahoma Supreme Court in *Vasek* "equated 'adequacy' of remedies with 'sufficiency.'" *Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 152 (Okla. 2008) (noting that its decision did "not

---

[5] The Court notes that after the parties' filings in this case, the Oklahoma Supreme Court decided *Ho v. Tulsa Spine & Specialty Hospital, L.L.C.*, 507 P.3d 673 (Okla. 2021). In a matter of first impression, the Oklahoma Supreme Court concluded that the governor's temporary emergency COVID orders expressed the established public policy of curtailing an infectious disease. *Id.* at 682. The *Ho* decision, however, does not affect the Court's analysis here because Aerotek challenges whether Mr. Sanders has an adequate statutory remedy through OSHA's administrative process. The *Ho* decision was limited to identifying a public policy goal, as the challenged trial court decision on appeal was that no violation of public policy of Oklahoma existed. *Id.* at 676, 678.

disturb *Vasek* or cases in which a plaintiff's conduct is alleged to have triggered a discharge or constructive discharge in violation of Oklahoma public policy"). Thus, the question is whether the remedies available to Mr. Sanders under OSHA are sufficient to protect Oklahoma's public policy goals. *Id.* To that end, Mr. Sanders must allege "that a breach of Oklahoma's public policy occurred for which (a) there is no available statutory-crafted remedy or (b) the available statutory remedy is not commensurate with that which is provided for similar work-related discrimination." *Id.* at 154. Whether a remedy is "adequate" is a "question[] of law to be resolved by the court." *McCrady v. Oklahoma Dep't of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005).

Considering Mr. Sanders' *pro se* status, the Court attempts to liberally construe his allegations to identify the basis of his *Burk* claim. In doing so, the Court understands Mr. Sanders' claim to be that he was wrongfully discharged for refusing to clean rooms that had housed COVID-19 patients without proper PPE and for complaining about potential exposure to COVID-19 to his supervisors. Mr. Sanders alleges that he filed a complaint "with OSHA for the intentional potential exposure to COVID-19, [and] it was denied for being untimely." Compl. ¶ 7. Based on these allegations, the Court understands the public policy basis of Mr. Sanders' *Burk* claim to be grounded in OSHA.

However, as Aerotek correctly points out, the Oklahoma Supreme Court has held that OSHA violations cannot form the basis for a wrongful discharge claim under *Burk*. *Griffin v. Mullinix*, 947 P.2d 177, 180 (Okla. 1997) (an employee "may not base a private tort claim [such as wrongful termination] against his private employer premised upon either the federal OSHA statute, Oklahoma's [Occupational Health and Safety Standards]

Act or the two in conjunction with one another"). Moreover, several federal circuit courts have held that OSHA contains no private right of action. *See Hoeft v. Dommisse*, 352 F. App'x 77, 80 (7th Cir. 2009) (unpublished) ("only the Secretary of Labor may sue to enforce [OSHA], which does not provide individual employees with any express or implied right of action"); *Glanton v. Harrah's Ent., Inc.*, 297 F. App'x 685, 687 (9th Cir. 2008) (unpublished) ("OSHA does not provide a private cause of action . . . . Indeed, OSHA creates an intra-agency mechanism by which an alleged violation can be raised by a private actor, 29 U.S.C. §§ 657(f)(1), 660(c), suggesting that Congress did not intend for OSHA-based actions to be litigated by private actors in federal court"); *Westine v. Gonzales Constr. Co.*, 103 F.3d 145, 1996 WL 720011, at *1 (10th Cir. 1996) (unpublished) (noting OSHA does not "contain statutory provisions permitting a private cause of action for personal injury"); *Taylor v. Brighton Corp.*, 616 F.2d 256, 258–64 (6th Cir. 1980) (concluding that Congress did not intend to create a private right of action for retaliatory discrimination under OSHA); *George v. Aztec Rental Ctr., Inc.*, 763 F.2d 184, 186 (5th Cir. 1985) (agreeing with the Sixth Circuit in *Taylor*, "[w]e therefore hold that there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to section 11(c)").[6]

---

[6] *See also Wheeler v. Skidmore*, Case No. 22-3042-SAC, 2022 WL 746513, *3 (D. Kan. Mar. 11, 2022); *Campbell v. Eaton Corp.*, Civil Action No. 1:17-cv-02661-RM-SKC, 2019 WL 5458816, at *6 (D. Colo. Sept. 30, 2019); *Chaney v. Wal-Mart Stores, Inc.*, No. CIV-15-592-R, 2015 WL 6692108, at *9 (W.D. Okla. Nov. 3, 2015); *Swartz v. Nat'l Aeronautics & Space Admin.*, Civil No. 07-510 RB/CEG, 2008 WL 11451981, *2 (D.N.M. Jan. 14, 2008).

Rather, an aggrieved party must, within 30 days of the incident, contact the Secretary of Labor to complain of the discriminatory conduct. 29 U.S.C. § 660(c)(2). If the Secretary finds that discrimination has occurred, then he shall bring an action in federal district court. *Id.* Moreover, even if a private cause of action did exist under OSHA, Mr. Sanders' claim would still fail because he did not exhaust his administrative remedies under the statute. Mr. Sanders alleges that OSHA denied his complaint as untimely. Thus, the Court finds and concludes that Mr. Sanders' *Burk* tort claim is foreclosed because an adequate federal remedy existed through OSHA's administrative process, and Mr. Sanders has failed to identify a private right of action for his unsafe working conditions claim.

Likewise, the new statute that Mr. Sanders relies on to support his unsafe working conditions claim does not appear to create a private cause of action. *See* Okla. Stat. tit. 76, § 111; *see also Walker v. Chouteau Lime Co*., 849 P.2d 1085, 1086 (Okla. 1993) (adopting a three-prong test for determining if a state statute implies a private right of action). Rather, it appears to relieve or limit a person's (defined to mean an individual, firm, partnership, corporation, or association) or agent of the person's liability from injury from exposure or potential exposure to COVID-19 "if the act or omission alleged to violate a duty of care of the person or agent was in compliance or consistent with federal or state regulations, a Presidential or Gubernatorial Executive Order, or guidance applicable at the time of the alleged exposure." *Id*. Thus, Mr. Sanders does not "belong to that class for whose 'especial' benefit [§ 111] was enacted." *Walker*, 849 P.2d at 1086.

11

Nor does § 111 "explicitly or implicitly" indicate that Oklahoma's legislature intended to create a private remedy. *Id.* Additionally, the Court does not find a private remedy consistent with the general scheme of Oklahoma's COVID-19 Product Protection Act. *Id*. at 1087. The purpose of the Act is to provide liability protection to businesses, manufacturers, and donors during the pandemic. To accomplish this, the legislature limits liability for businesses that follow COVID-19 federal and state regulations and guidelines. If the legislature had intended to create a private right of action under § 111, it knew how to do so, and creation of such a right rests with the legislature, not this Court. *Walker*, 849 P.2d at 1087.

Regardless, it does not change the fact that Mr. Sanders' remedy for unsafe working conditions at Integris was through the OSHA administrative process, as evidenced *supra*. Accordingly, the Court finds that Mr. Sanders' claim for breach of contract and violation of public policy against Aerotek should be dismissed.

> **B.**   **Mr. Sanders' claims against Ms. Lozano are dismissed for failure to effect proper service.**

Ms. Lozano asserts that the Court should dismiss Mr. Sanders' claims against her under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Rule 4(e) provides that service may be effected by personal delivery, delivery at the individual's dwelling or usual place of abode, delivery on the individual's authorized agent, or, as applicable here, pursuant to the laws of the State of Oklahoma. Fed. R. Civ.

P. 4(e). In Oklahoma, as potentially applicable here, service may be effected by personal delivery, certified mail, or publication. Okla. Stat. tit. 12, § 2004.

The record reflects that Mr. Sanders first attempted service on Ms. Lozano on January 7, 2021, by leaving a copy of the summons and complaint with Taylor Singleton at 3600 NW 138th Street, Suite 201, in Oklahoma City, Oklahoma. [Doc. No. 4 at 4, 7]. According to Ms. Lozano's signed Declaration [Doc. No. 31-1], her residence and work location are in San Antonio, Texas, not Oklahoma City. Lozano's Decl. ¶ 2 [Doc. No. 31-1]. Further, Ms. Lozano asserts that she has never authorized Ms. Singleton to accept service on her behalf. *Id.* ¶ 4. The Court finds this attempted service insufficient.

The record reflects that Mr. Sanders made another attempt to serve Ms. Lozano on March 5, 2021, by personally serving Aerotek's registered agent for service of process in Oklahoma at Corporation Service Company located at 10300 Greenbriar Place in Oklahoma City, Oklahoma. [Doc. No. 22 at 4]. However, Aerotek's registered agent rejected the attempted service received on March 5, 2021, because it was not authorized to accept service on Lozano's behalf. [Doc. No. 31-3 at 2]. Because Aerotek's registered agent was not authorized to receive service on Lozano's behalf, and 10300 Greenbriar Place in Oklahoma City was not Ms. Lozano's dwelling house, usual place of abode, or business address when Mr. Sanders attempted service in March 2021, the service is insufficient under Rule 4 and Oklahoma law.

Accordingly, the Court finds that Mr. Sanders' claims against Ms. Lozano should be dismissed without prejudice for failure to effect proper service. *See, e.g.*, *Mata v. Anderson*, 760 F. Supp. 2d 1068, 1085 (D.N.M. 2009) (noting that "dismissal for failure

to timely serve is without prejudice"); *see also Baca v. Rodriguez*, No. CIV-12-156-BRB/WDS, 2013 WL 12147634, at *2 (D.N.M. Jan. 24, 2013) (stating that "[a] defendant dismissed pursuant to Rule 12(b)(5) generally is dismissed without prejudice"), *aff'd*, 554 F. App'x 676 (10th Cir. 2014) (unpublished).[7]

## IV.   **CONCLUSION**

The Court GRANTS the Motion to Dismiss [Doc. No. 11]. The Court dismisses without prejudice Mr. Sanders' claims against Ms. Lozano for failure to effect proper service and Mr. Sanders' breach of contract and violation of public policy claim against Aerotek. Following this Order, the docket will reflect the dismissal of Alicia Lozano, and the parties shall update their case caption in future filings.

IT IS SO ORDERED this 30th day of June 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court dismisses the claims against Ms. Lozano for insufficient service of process, the Court does not address Ms. Lozano's Rule 12(b)(6) arguments.